SARTAIN, Judge.
Plaintiff, by confirmation of default, obtained a judgment against defendants. When plaintiff commenced garnishment proceedings to collect on the judgment, defendants instituted this present action to have the original judgment set aside on the grounds that it was obtained through fraud and ill practice on the part of plaintiffs’ attorney.
The trial judge held that defendants had failed to prove that the judgment against them was obtained by fraud and refused to set it aside. Defendants now appeal from this adverse judgment.
.The pertinent facts giving rise to the instant litigation are as follows:
Plaintiff as the holder of defendants’ promissory note, which was secured by a chattel mortgage on some fifteen items of furniture, filed suit thereon on July 6, 1967. No answer having been filed, a preliminary default was entered on January 26, 1968 and. confirmed on January 31, 1968. Garnishment proceedings were commenced on February 20, 1968.
Defendants originally filed a petition to have the garnishment set aside on the grounds that they had filed for bankruptcy on July 6, 1967 and that the debt sued upon was one listed therein and plaintiff was so notified. Accordingly, they charged that *263 plaintiff knowingly and illegally pursued the collection of a debt from which defendants were discharged on September IS, 1967.
Subsequently, defendants filed the instant petition containing the same allegations as the first but with the further charges of fraud and ill practice in the attainment of the judgment.
The necessity for the filing of the second petition alleging fraud, etc., is obvious because neither the stay order issued in the bankruptcy proceedings nor the order of a final decree of discharge in bankruptcy were filed in this record as an affirmative defense prior to the default judgment. See Home Finance Service Washington Parish, Inc. v. Taylor, 187 So.2d 778 (1st La.App., 1966); Carpenter v. X-L Finance Co., Inc., 195 So.2d 156 (1st La.App., 1967); and X-L Finance Co., Inc. v. Fenske, 197 So.2d 182 (1st La.App., 1967). These authorities set forth the guidelines to be followed with respect to cases pending or where judgments have been rendered in a state court when a bankruptcy petition has been filed in Federal Court. In essence, to effect a discharge of a debt and to terminate the state court proceedings, the discharge in bankruptcy must be pled as an affirmative defense.
Defendants urge the applicability of CCP Article 2004, which permits the annulment of a judgment obtained by fraud, deception or artifice. They rely upon Vinson v. Picolo, 15 So.2d 778, (Orl.La.App., 1943) and Dixson v. Carter, 138 So.2d 227 (4th La.App., 1962) which hold that irrespective of negligence or laches, when a judgment is obtained through some intentional artifice or deception and enforcement of the judgment would be inequitable and unconscionable, the judgment should be annulled. This is particularly true where a litigant fails to assert a legal defense due to some misrepresentation on the part of his adversary. Lazarus v. McGuirk, 42 La.Ann. 194, 8 So. 253 While these authorities undoubtedly stand for the propositions announced, the facts in each are not apposite to those in the instant matter, therefore, the decisions themselves are not controlling here. McGuirk, (1890).
The thrust of defendants’ case is that on July 6, 1967 both the suit on the note and the bankruptcy petitions were filed. Plaintiff, as a creditor, received a notice of the bankruptcy proceedings and a copy of the stay order pertaining to the suit on the note. Counsel for plaintiff attended the first meeting of the creditors and shortly thereafter (August 23, 1967) wrote directly to defendants, advising them that the referee had disclaimed the furniture to plaintiff as a secured creditor. The letter offered defendants the choice of keeping the furniture and paying the obligation or surrendering the furniture and being relieved of the debt. On September 5, 1967, counsel for defendants wrote to plaintiff’s attorney advising that defendants could not pay for the furniture and for plaintiff to pick it up.
Defendants testified that when representatives of plaintiff came to their home, they just “checked” on the furniture and said they would be back.
Counsel for defendants testified that he had no communication, verbal or otherwise, with plaintiff’s attorney following his (defendants’) letter of September 5, 1967. The next thing he knew his client’s salary was being garnisheed. He admitted that prior to his letter of September 5, 1967, he and counsel for plaintiff had discussed settlement of the claim for a lesser sum.
Plaintiff’s version is quite to the contrary. Counsel for plaintiff testified that he attended the first meeting of the creditors. At the close of this hearing, he followed defendants and their attorney from the building and met with very little .response when he endeavored to discuss the disclaimer of the furniture with them. This *264 prompted his letter of' August 23, 1967, giving defendants the choice mentioned above. When he received counsel for defendants’ ’ letter of September 5, 1967, he advised his client that defendants had elected to give up the furniture. Two representatives of plaintiff went to defendants’ home and found only six or seven of the items of furniture there. With the ex--ception of a washing machine, which defendants contended was not the same one as listed in the chattel mortgage, all of the furniture was in a deplorable condition. Plaintiff’s representatives then declined to pick up any of the furniture.
Counsel for plaintiff stated that he advised defendants’ attorney that the furniture purportedly mortgaged was not available to his client and under these circumstances it behooved them to make some effort to settle the matter. A sum much lower than the original judgment was discussed. Plaintiff’s attorney claimed that on several occasions he endeavored to reach an amicable arrangement with counsel for defendants but was rather disdainfully treated by the latter throughout this whole affair. He stated that at no time was the law suit ever mentioned nor was he asked to withhold any further action or to give opposing counsel additional time in which to plead. He concluded by stating after four months of hearing nothing further from defendants or their attorney, he proceeded to enter a preliminary default and confirm the same.
These conflicting positions were presented squarely to the trier of fact and he concluded that no fraud was practiced upon defendants nor was any ill practice or artifice engaged in by plaintiff’s attorney. The judge a quo’s evaluation of the evidence and the weight accorded the testimony of each witness should not be disturbed on appeal unless there has been a clear showing of manifest error. Finding no such error here, the decision of the district court is affirmed at appellants’ costs.
Affirmed.